IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID HASSEL, et al.

    Plaintiff,

vs.

D.K. SISTO, et al.

    Defendants.

                               /

No. CIV S-10-0191 GEB CMK (TEMP) P

FINDINGS AND RECOMMENDATIONS

      Plaintiffs are state prisoners proceeding through counsel with an action under 42 U.S.C. § 1983. They allege that they were exposed to and contracted tuberculosis while they were incarcerated at California State Prison-Solano (CSP-Solano). The court has ordered service on D.K. Sisto, the warden at CSP-Solano, and Alvaro Traquina, the chief medical officer (CMO) there.

      This case came before the court on defendants' motion to dismiss the original complaint, heard on November 17, 2010. The magistrate judge then assigned to the case granted the motion with leave to amend. See Docket No. 25. Plaintiffs filed an amended complaint on December 1, 2010, and defendants again moved to dismiss it. That motion came for hearing on April 12, 2011.

/////

I.   Allegations of the first amended complaint

Plaintiffs allege they contracted TB as a result of defendants' deliberate indifference to the fact that other inmates at CSP-Solano were active, contagious carriers of TB. However, none of the plaintiffs have active TB. Rather, they all state in the amended complaint that they have latent TB, which is not contagious. First Am. Compl. ¶ 14. The amended complaint explains that latent TB "occurs when the infected individual's immune system is strong enough so that it prevents the more aggressive active form." Id. at ¶ 6. Still, the possibility that the mycobacteria could become active through subsequent exposure to TB or weakening of the immune system "require[s] treatment with anti-tuberculosis medications similar to the treatment of the active form." Id. Infected individuals require medical monitoring for the rest of their lives. Id.

The amended complaint names four inmates (none of them plaintiffs in this action) who had active TB while at CSP-Solano: (1) inmate Nguyen, who was discovered as a carrier and removed from the general population in April 2004; (2) inmate Dennison, who allegedly contracted TB from Nguyen and was identified as an active TB carrier in 2004 but remained in the general population at least through October 2007, despite showing signs of the infection through a persistent cough; (3) inmate Singletary, who tested positive for active TB in July 2008, some six months after plaintiffs tested positive for latent TB; and (4) an inmate called "Shorty," who was identified with active TB in May 2009 but was known as a TB-positive inmate as early as April 2004. Id. at ¶¶ 31-33, 40, 44-45.

The complaint alleges that since 1992, the California Department of Corrections and Rehabilitation (CDCR) has had procedures and protocols in place to control the spread of TB. The procedures include isolation of active carriers and screening of inmates in places where the bacteria could have spread. See First Am. Compl. ¶ 11. According to the amended complaint, CDCR policy places an institution's warden and CMO on the team responsible for managing TB infection once an "index case" is identified at a particular institution. Id.

Plaintiffs further allege that in June 2004, CSP-Solano enacted an institutional operations plan (IOP) for mandatory TB testing and processing. Id. at ¶ 12. According to the complaint, the IOP "requires annual review by Associate Wardens and the CMO, with the Warden having responsibility for final approval of the plan. Associate Wardens and the CMO have responsibility for daily functional implementation of the IOP." Id. However, defendant Traquina was a "signatory" to Solano's IOP no earlier than the May 2006 version, and Sisto became a signatory in 2007 (with Traquina signing on again). Id.

> Against this background of the defendants' institutional responsibilities, the plaintiffs allege that
>
>> Defendants Sisto and Traquina failed to implement the aforementioned protocols and procedures, thereby knowingly exposing Plaintiffs... to other inmates with active TB. Further, defendants... had personal knowledge that at CSP-Solano, the policies and protocols for prevention of tuberculosis were not being enforced and that some inmates, such as plaintiffs, would therefore be infected.

First Am. Compl. ¶ 13. Plaintiffs allege that after they were diagnosed with latent TB, "they were required to take dangerous anti-TB medications for many months and experienced side effects from these medications. They will also require medical monitoring for the rest of their lives, because they are at risk of developing active TB, especially if their immune systems become compromised by other disease states...." Id. at ¶ 14.

Plaintiffs seek "general damages," special damages that include the cost of future medical monitoring following release from prison, punitive damages, attorneys' fees and costs. Id., p. 17.

II.   Defendants' motion to dismiss

Defendants have moved to dismiss under Rules 12(b)(1) and (6), arguing: (1) the court does not have jurisdiction under Article III because there is no case or controversy ripe for adjudication; (2) plaintiffs' Eighth Amendment claims should be dismissed to the extent they are based on the alleged failure to follow state policies or law; (3) plaintiffs cannot state a civil rights

3

claim based on defendants' supervisory status; (4) plaintiffs have not alleged a causal connection between defendants' actions and the harm alleged; (5) plaintiffs cannot sue Doe defendants in a § 1983 action.

### A. Whether a case or controversy exists

Defendants argue, somewhat interchangeably, under the jurisdictional precepts of standing and ripeness and submit that plaintiffs have not satisfied either. "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing. Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.'" Wolfson v. Brammer, 616 F.2d 1045, 1058 (9th Cir. 2010)(internal citations omitted).

#### 1. Ripeness

The ripeness doctrine is an intuitively appropriate bar to plaintiffs' claim for any future damages they might suffer from defendants' alleged indifference toward their exposure to TB:

> The ripeness doctrine "is peculiarly a question of timing," designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action[.]" "[T]hrough avoidance of premature adjudication," the ripeness doctrine prevents courts from becoming entangled in "abstract disagreements."

Wolfson, 616 F.3d at 1057 (internal citations omitted). Indeed, in this case, any future damage is too speculative to bring to court now. Insofar as plaintiffs seek prospective costs of health care, those costs would not be compensable, if at all, until after each inmate is released from prison, if any of them ever is. Moreover, if any of them develops active TB, recoverable costs and damages would have to be attributable to a "true relapse in their 2008 treatment," as defendants put it, "that was not due to any of their own actions...." Defendants' Memorandum, p. 14 (Docket No. 27). Finally, defendants point out that there is no imminent danger of these inmates developing active TB since it occurs in only 10% of people whose latent TB goes *un*treated. Because

4

plaintiffs have been effectively treated, the risk, say defendants, is even lower.  Id.

Defendants are correct that plaintiffs' prospective costs and injuries are too speculative to present a ripe case or controversy.  Therefore, any claims for future damages should be dismissed.  The court must now inquire whether plaintiffs have adequately pled any past harm or actual injury in their amended complaint.

### B. Standing

Ripeness (or lack of it) is a less persuasive argument for dismissing a claim to recover for an injury that has allegedly already occurred.  The "question of timing" identified in Wolfson points in the opposite direction here, so the Article III doctrine of standing, on which defendants also rely, provides a better framework with which to assess their argument that there is no Article III jurisdiction.

In Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), the Supreme Court outlined the three elements of constitutional standing:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized[] and (b) "actual or imminent, not 'conjectural' or hypothetical[.]'"  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (internal citations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Id. at 561.

Since Lujan, though, the Supreme Court's general pleading jurisprudence has changed.  The notice pleading regime that had been in place since Conley v. Gibson, 355 U.S. 41 (1957), has been supplanted by one that requires a somewhat higher degree of factual

5

1  particularity.  Federal courts still accept a complaint's allegations as true and construe the
2  complaint in the light most favorable to the plaintiff, but a complaint must contain more than
3  "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause
4  of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  "Threadbare recitals
5  of the elements of a cause of action, supported by mere conclusory statements do not suffice."
6  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim must have facial
7  plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff
8  pleads factual content that allows the court to draw the reasonable inference that the defendant is
9  liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "[T]he pleading standard Rule 8
10 announces does not require 'detailed factual allegations,' but it demands more than an
11 unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (citations omitted).  A
12 complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual
13 enhancement.'"  Id. (citations omitted).

14          In a sense, the mandate on plaintiffs to plead facts that show they have standing
15 dovetails with their burden to plead the elements of their Eighth Amendment claim.  Indeed, the
16 standards articulated under Twombly and Iqbal apply with equal force in the court's assessment
17 of whether plaintiffs have standing to bring their claim.  Standing "must be supported in the same
18 way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner
19 and degree of evidence required at the successive stages of the litigation."  Lujan, 504 U.S. at
20 561.

21          Plaintiffs state that they underwent the recommended nine-month treatment after
22 they tested positive for latent TB, but they do not allege the treatment was inadequately
23 administered or that prison officials have been indifferent to their shared medical condition once
24 diagnosed.  See First Am. Compl. ¶ 43.  In their opposition to the motion to dismiss, plaintiffs
25 respond to defendants' standing argument by saying that they "suffered an injury when they were
26 unnecessarily infected with TB."  Opposition at 8.  They also state in the amended complaint that

the treatment they received was "dangerous" and that during treatment they "experienced side effects from these medications." Id. at ¶ 14.  However, plaintiffs do not in any way describe the danger inherent in their treatment or the side effects they actually experienced.

Plaintiffs' failure to describe how the "danger" of TB treatment manifested in harmful or painful side effects that they actually suffered means they have not alleged any concrete injury that could be redressed by their demand for "general damages," as they put it in their amended complaint.  Although side effects of medical treatment are generally thought to be undesirable, it does not follow that side effects are necessarily painful or even difficult.  Averring a "side effect" and leaving it at that is not the same as averring a "broken bone" or "headache" or any other condition that is inherently injurious or painful.  Nor does it suffice to say, without more, that some side effects of TB treatment are "potentially deadly." First Am. Compl., ¶ 3. When pressed at the hearing on the motion to dismiss to say what actual harm the plaintiffs suffered, plaintiffs' counsel had nothing to add to the amended complaint's bald statement that plaintiffs experienced the side effects of TB treatment, whatever those may be.  In Iqbal's terms, the plaintiffs could give no "further factual enhancement" to the physical effects of TB treatment they allege to have suffered.  It is a telling omission:  plaintiffs who have physically suffered in a way that would justify an award of money damages rarely fail to describe the suffering in their complaints, much less when they are asked by the court to describe it.

The only injury that plaintiffs have averred with any particularity is their exposure to conditions of confinement that violate the Eighth Amendment – in other words, the constitutional violation itself.  There is no question that a violation of the right to be free from cruel and unusual punishment comprises a concrete injury necessary to give a claimant standing. However, for the court to find standing, it must also be "likely that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561, supra.  Plaintiffs seek no injunctive relief, nor have they asserted a claim for nominal damages as vindication for the infringement of their constitutional rights.  Their written opposition to defendants' standing argument mentions only

the anti-TB medication they were administered and the "potential" of the TB infection "to recur in a more virulent form" in the future. Opposition at 8. Those appear to be the only manifestations of the underlying constitutional injury that plaintiffs have any interest in redressing; they are silent on the possibility of a remedy for the infringement itself. The court will not posit all conceivable avenues of redress where a plaintiff represented by counsel has chosen only some.[1]

### III. Conclusion

Plaintiffs' allegations of past and future physical injury comprise the full extent of their case under the Eighth Amendment and 42 U.S.C. § 1983. They seek redress only for physical suffering, yet they have failed to describe any specific physical harm from the medication and treatment they received for latent TB. The possibility that plaintiffs may experience a more virulent recurrence of TB in the future or require medical monitoring or treatment once outside of prison is too speculative to adjudicate now in federal court. Therefore, plaintiffs do not have standing to bring claims of past harm, and any claim for future harm is unripe. Defendants are correct that plaintiffs do not present a case or controversy justiciable under Article III.

The court need not address defendants' other arguments for dismissal. The court will recommend that the motion to dismiss be granted for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

/////

---

[1] Cf. Oliver v. Keller, 289 F.3d 623 (9th Cir. 2002). There, the Ninth Circuit found the pro se complaint was "consistent with a claim for nominal damages even though they are not expressly requested." Id. at 630. In so ruling, the Ninth Circuit explicitly gave the plaintiff the liberal allowance reserved for the interpretation of pro se pleadings. See id. (citing Haines v. Kerner, 404 U.S. 519, 520 (1972), and Allah v. Al-Hafeez, 226 F.3d 247, 251 (3rd Cir. 2000)). Because the plaintiffs in this case are represented by counsel, the court cannot give their amended complaint such a liberal construction. Moreover, the Oliver panel was not addressing whether that plaintiff had met the "irreducible constitutional minimum of standing," Lujan, 504 U.S. at 560, nor had the heightened pleading requirements of Iqbal been announced.

IT IS HEREBY RECOMMENDED that:

1. The motion to dismiss (Docket No. 27) be granted.

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 21, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

hm
hass0191.57